# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-1498
_____

Kyle Jerome Dalen, individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

Jodi Harpstead, Commissioner of the Minnesota Department of Human Services,
in her individual and official capacities

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 24, 2024
Filed: December 17, 2024
_____

Before GRUENDER, BENTON, and KOBES, Circuit Judges.
_____

BENTON, Circuit Judge.

Kyle J. Dalen was ordered civilly committed, but not taken into any kind of custody. Five months later, he was arrested for felony harassment and stalking, and placed in the county jail. Dalen sued, alleging pretrial punishment, unreasonable

restraint, and deliberate indifference to his medical needs. The district court[1] dismissed the complaint. Dalen appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

On May 20, 2021, Dalen was charged in state court with harassment and violating a restraining order. He suffers from antisocial personality disorder, narcissistic personality disorder, and chemical dependency.

The state court found him incapable of understanding the proceedings against him, ordering him civilly committed on November 9, 2022. The court found that Dalen was "unwilling to establish outpatient mental health care for either therapy or psychiatric medication management." Despite the order, and a Minnesota law requiring admission to a state-operated treatment program within 48 hours after a commitment order, Dalen was not taken into any kind of custody. *See* **Minn. Stat. § 253B.10, subd. 1**.

Eventually, for later incidents of harassment and stalking, Dalen was arrested on April 3, 2023. He remained in county jail until admitted to a regional treatment center on June 6, 2023.

One month later, Dalen filed a class action complaint against Minnesota Department of Human Services Commissioner Jodi Harpstead. He alleged she violated his rights by failing to timely transfer him out of jail and into a treatment facility.

The district court dismissed the complaint, concluding he failed to plausibly allege his claims under federal law. We review de novo "the grant of a motion to

---

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). Courts require "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept a complaint's allegations as true, but do not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Legal conclusions must be supported by factual allegations. *Id*.

## II.

Dalen argues that the district court improperly dismissed his claim of deliberate indifference in violation of the Fourteenth Amendment's Due Process Clause. The Eighth Amendment prohibits cruel and unusual punishment, protecting prisoners from deliberate indifference to serious medical needs. *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008). The law requires Dalen to show: (1) an objectively serious medical need; and (2) the defendants knew of the medical need but were deliberately indifferent to it. *Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir. 2006).

"The determination that a medical need is objectively serious is a factual finding." *Jones*, 512 F.3d at 482. An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a "layperson would easily recognize the necessity for a doctor's attention." *Id.* at 481. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094,1096 (8th Cir. 2000).

Dalen's complaint lacks sufficient facts to support an objectively serious medical need. The only medical conditions referenced in the complaint are that he suffers from "antisocial personality disorder, narcissistic personality disorder, and chemical dependency." These ailments, in his words, were "the same serious medical needs that were addressed in the original commitment order." Dalen ignores

that the original commitment order was entered five months before his detention. The complaint fails to plead with specificity which medical needs required attention during his detention.

Dalen could prove an objectively serious medical need by showing he received a physician's diagnosis. *See* **Roberson v. Bradshaw**, 198 F.3d 645, 648 (8th Cir. 1999) ("The need or the deprivation alleged must be either obvious to the layperson or supported by medical evidence, *like a physician's diagnosis.*" (emphasis added)). As evidence of a doctor's diagnosis, he relies on the civil commitment order, which included "an evaluation and diagnosis from a court-appointed medical examiner." *See generally* **Min. R. Crim. P. 20, subd. 4.** But he fails to show this diagnosis applied five months later when he was detained. He must show not only that his condition is serious, but also urgent—one that "may produce death, degeneration, or extreme pain." *See* **Carney v. Hess**, 2007 WL 9752816 (E.D. Mo. Jan. 24, 2007), *aff'd*, 271 F. Appx. 543 (8th Cir. 2008). The medical examiner's five-month-old diagnosis here does not satisfy the standard.

Dalen's other option is to show a medical condition so serious that "even a layperson would easily recognize the necessity for a doctor's attention." **Jones**, 512 F.3d at 481. The complaint does not allege such a condition. **Id.** at 482 (summarizing serious medical needs that were obvious to a layperson where an inmate: "was pregnant, bleeding, and passing blood clots, *see Pool v. Sebastian County, Ark.*, 418 F.3d 934, 945 (8th Cir. 2005); had swollen and bleeding gums and complained of extreme tooth pain, *see Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); experienced excessive urination, diarrhea, sweating, weight loss, and dehydration related to known diabetes, *see Roberson v. Bradshaw*, 198 F.3d 645, 647–48 (8th Cir. 1999); or exhibited signs of early labor and her medical records clearly documented a history of rapid labor and delivery, *see Rahija*, 114 F.3d at 785.").

The district court correctly dismissed the claim for deliberate indifference to serious medical needs.

-4-

Dalen alleges that the defendant's failure to timely transfer him from jail to a treatment facility was punitive. "The Due Process Clause of the United States Constitution prohibits the punishment of persons prior to a judgment of conviction." *Villanueva v. George*, 659 F.2d 851, 853 (8th Cir. 1981) (en banc). The government may detain defendants pretrial so long as the "conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979).

To determine if a condition is punitive, courts analyze whether "the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. To prevail on a conditions-of-confinement claim, the plaintiff must show the conditions were either: (1) intentionally punitive; or (2) not "reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020).

Dalen's first option is to show the conditions were intentionally punitive. He argues in conclusory terms that jails and prisons are generally "severely detrimental to the safety and wellbeing of individuals who suffer from disorders and dependencies like Plaintiff." He argues that the defendant's delay to transfer him from jail—absent a conviction—constituted punishment in violation of the Due Process Clause of the Fifth Amendment.

Dalen's arguments fail because, as he acknowledges, he does not challenge "some uniquely punitive condition in the jail where he was detained." Instead, he proposes that "the normal conditions of detention are particularly detrimental to individuals with severe mental health conditions" and such conditions "becomes unconstitutionally punitive when that detention is unreasonably and unjustifiably prolonged." To support his position, Dalen relies on cases suggesting a court

examine the "totality of the circumstances" to decide whether conditions were punitive. *See, e.g.*, ***Villanueva,*** 659 F.2d at 854.

In the *Villanueva* case, the plaintiff pled with specificity the gross conditions of his pretrial confinement: confined to a six-by-six-foot cell for 72-hour periods without opportunity for exercise or showers; forced to eat meals in a cell infested with insects and rodents; and, permitted one telephone call and one non-contact visit per week. This court found that these conditions of confinement were "unnecessarily excessive and bore no reasonable relation to a legitimate governmental interest." ***Id***.

Dalen's complaint alleges nothing like the *Villanueva* conditions. The only specific allegation on appeal is the length of time he was in the county jail before transfer to a treatment facility. This does not demonstrate a punitive condition of confinement here, because his complaint fails to identify the specific condition of confinement.

The district court correctly dismissed the claim for punitive conditions of confinement.

## IV.

Dalen challenges the district court's dismissal of his claim for unreasonable restraint. Involuntarily civilly committed people have a protected liberty interest to be free from unnecessary bodily restraint. ***Youngberg v. Romeo***, 457 U.S. 307, 320–22 (1982). Courts apply a "professional judgment" standard, providing deference to the judgment of qualified professionals, whose "decision is presumptively valid." ***Id***. at 323.

Dalen contends that the unreasonable restraint in question was his "unnecessarily extended detention and the attendant conditions, including but not limited to the complete lack of mental health treatment and *de minimis* physical

health treatment." The complaint, again, has no specific facts about how he was restrained. His allegations of inadequate treatment are nothing like the actual physical restraints this circuit has examined (and found reasonable). *See, e.g.*, *Beaulieu v. Ludeman*, 690 F.3d 1017, 1031 (8th Cir. 2012) (finding that "full restraints," including a black box, wrist chain, and leg irons, were "collectively reasonable"); *Heidemann v. Rother*, 84 F.3d 1021, 1025 (8th Cir. 1996) (holding that using a "blanket wrapping technique" on a disabled nine-year-old girl who suffered from epilepsy did not violate her rights). His failure to "articulate a bodily restraint" is fatal to a *Youngberg*-based claim. *Montin v. Gibson*, 718 F.3d 752, 755 (8th Cir. 2013) ("At some point along the spectrum of restrictions that might potentially be characterized as bodily restraints, the asserted restraint becomes merely an incident of the fact of commitment.").

\* \* \* \* \* \* \*

The judgment is affirmed.

_____